**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JONATHAN PEPPER COMPANY, INC.,** and **TEAKNIQUES CORPORATION,** | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 05 C 1404 |
| **HARTFORD CASUALTY INSURANCE COMPANY,** | ) ) ) | |
| Defendant. | ) ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On August 31, 2002, a fire occurred at a warehouse in Aurora, Illinois. According to investigators, the fire was suspicious. When plaintiff Jonathan Pepper Company, Inc. ("Jonathan Pepper") filed a property loss notice with defendant Hartford Casualty Insurance Company ("Hartford") under its policy with Hartford (on which plaintiff Teakniques Corporation ("Teakniques") was a loss payee), Hartford refused to pay, stating that it believed Teakniques' president and Jonathan Pepper's officer Gary Cryster ("Cryster") intentionally set the fire and misled Hartford during its investigation. Plaintiffs then filed a breach of contract claim also seeking attorneys' fees under 215 ILL. COMP. STAT. 5/155 (2007). Hartford has asserted counterclaims for fraud and civil damages for insurance fraud under 720 ILL. COMP. STAT. 5/46-5. Hartford has brought a motion for summary judgment on plaintiffs' claims and on its counterclaim for civil damages for insurance

fraud.  For the following reasons, I grant defendant's motion in part and deny it in part.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007) (citing FED. R. CIV. P. 56©).  If the moving party meets this burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial.  *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006) (citing FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990)).  The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party.  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

The parties agree that, taking the facts in the light most favorable to plaintiffs, on August 31, 2002 a fire occurred in a warehouse partially leased by Jonathan Pepper.  The parties

disagree about many of the other relevant facts, and have filed extensive motions to strike each others' summary judgment papers. Plaintiffs originally filed a motion to strike Hartford's motion for summary judgment, statement of material facts, and evidence in support of its motion, arguing that Hartford improperly relied on inadmissible documents. I deferred ruling on that motion to allow Hartford to file any additional evidence supporting admissibility. Hartford did provide additional evidence. Hartford then filed its own motion to strike plaintiffs' statement of additional facts and certain exhibits in support of plaintiffs' response to Hartford's motion for summary judgment, also arguing that the response and exhibits contain inadmissible evidence and are otherwise improper. Finally, plaintiffs filed a motion to strike portions of Hartford's reply in support of its motion for summary judgment, arguing that the reply contains facts not referenced in Hartford's statement of material facts. I have discretion whether to grant these motions. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 987 (7th Cir. 2001). While I deny these motions, I will not consider any objected-to aspect of either side's briefing or statements of fact that rely on inadmissible evidence or that do not comport with the local rules.

I must resolve certain of the evidentiary disputes between the parties in order to resolve Hartford's motion for summary judgment. Hartford asks me to consider a whole host of evidence about the

fire and the post-fire investigation from certain documents attached in support of its motion for summary judgment, including (1) a transcript of an interview a Hartford investigator purportedly conducted with Cryster on September 18, 2002, attached as Exhibit 4; (2) a transcript of an interview Aurora fire investigators conducted with Cryster on September 18, 2002 (Ex. 6); (3) a transcript of an "Evaluation Under Oath" conducted of Cryster on October 14, 2003 (Ex. 5); (4) a letter Hartford sent to counsel for Jonathan Pepper denying its claims (Ex. 8); (5) an "investigation report" from 2001 of a purported loss Cryster claimed from another insurer caused by a car fire (Ex. 9); (6) telephone records (Ex. 10); (7) a summary of an interview conducted by the United States Department of Justice Bureau of Alcohol, Tobacco and Firearms ("ATF") of L.G. "Red" Bernhart (Ex. 13); (8) a transcript of a purported interview with Cryster's ex-wife Carol Cryster on October 21, 2002 (Ex. 14); (9) a Trans Union credit report on Cryster (Ex. 16); (10) a transcript of Carol Cryster's deposition (Ex. 20); (11) a transcript of a purported Hartford interview with Cryster's son William Cryster on November 19, 2002 (Ex. 23); (12) internal Hartford records (Ex. 26); (13) a transcript of a purported Hartford interview with Finley on October 3, 2002 (Ex. 27); (14) a document entitled "Aurora Police Department Incident Report" (Ex. 29); (15) a document entitled "Aurora Fire Department Incident Questionnaire and Narrative" (Ex.

30); (16) documents from the Woodhaven Association (Ex. 33); (17) an expert report of William J. Bradshaw (Ex. 34); and (18) a printout report purporting to show previous insurance claims by Cryster (Ex. 35). Cryster has raised various evidentiary objections to each of these exhibits, primarily concerning Hartford's failure to authenticate and provide foundation for them. Hartford in turn has raised evidentiary objections to portions of certain exhibits Cryster included in opposition to Hartford's motion, including (1) Cryster's affidavit (Ex. D); (2) a copy of a recording of the September 18, 2002 Hartford interview of Cryster, a transcript of which Hartford includes as Exhibit 4 in support of its motion (Ex. G); (3) records from the Aurora Township assessor (Ex. H); and (4) an affidavit of adjuster Steven Padula (Ex. M).

Although given the opportunity to cure the evidentiary defects in its exhibits, Hartford has not completely done so, and many of its attempts to cure demonstrate misapplication or misunderstanding of the Federal Rules of Evidence. First, although Hartford makes the general assertion that any documents plaintiffs produced in discovery are automatically authenticated, this is not true. If plaintiffs were contesting the authenticity of documents that they created or maintained, it is true that their production of these documents to Hartford would automatically authenticate them. *See, e.g.*, *United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982). None of the cases Hartford has cited support the proposition that

any document plaintiffs produced in discovery from whatever source are automatically authenticated simply because plaintiffs produced them.  This position defies logic.

While the additional affidavits and evidence that Hartford presented resolved some evidentiary defects by laying foundation and authenticating transcripts of certain interviews by Hartford or investigators, Hartford has not resolved all the evidentiary objections raised by plaintiffs.  For instance, Hartford provides a statement from Thomas Wickey ("Wickey") stating that Exhibits 9, 16 and 35 are true and correct copies of a document he received from Farmers Insurance Group, a credit report from Trans Union, and a claims report obtained from an unidentified source, but Wickey's affidavit does not demonstrate that Wickey has any personal knowledge of what these documents are in order to authenticate them, and it does not lay any foundation demonstrating why these documents are not inadmissible hearsay (the fact that they were "obtained" in the regular course of Hartford's business does not establish an exception to the hearsay rule).  While plaintiffs admitted that Exhibit 13 was a true and accurate copy of a document plaintiffs received from the ATF, Hartford has not shown that the statement contained within the document is admissible or otherwise resolved plaintiffs' objection that this is an inadmissible unsworn statement.  Hartford has presented no testimony authenticating Exhibit 14, a transcript of an interview of Carol Cryster by Kevin

Wolsfelt; Wolsfelt's oblique reference in his deposition that he conducted an interview of Cryster does not establish the authenticity of this transcript, and Hartford has still presented no evidence or argument explaining how this transcript is not inadmissible hearsay (Hartford's contention that this qualifies as the admission of a party opponent is plainly incorrect as Carol Cryster is not a party or a representative of a party in this matter). Hartford has presented no additional argument or evidence authenticating Exhibits 29 or 33, a purported Aurora Department police report and documents from the Woodhaven Association, other than its specious argument that plaintiffs authenticated Exhibit 29 by producing it, and somehow Woodhaven Association authenticated Exhibit 33 by producing it in response to a subpoena. Hartford presented no argument concerning Exhibit 8, a purported letter from Hartford to counsel for Jonathan Pepper. Therefore, I cannot consider Exhibits 9, 13, 14, 16, 29, 33 and 35.[1]

---

[1]Hartford has also objected to Exhibits D, G, H, and M that plaintiffs attached to their response. Plaintiffs responded to part of Hartford's motion to strike, but never directly responded to Hartford's concerns about these exhibits. I will not consider any portions of Exhibits D and M that are inadmissible or violate the local rules. I agree that plaintiffs have not laid any foundation for Exhibit G, so I will not consider it. Hartford contends that I should exclude Exhibit H, as a sanction because plaintiffs obtained it after the close of discovery and did not provide it to Hartford prior to including it in their response. It appears that plaintiffs obtained Exhibit H by writing a letter to the Aurora Township assessor outside of the formal discovery procedures. Plaintiffs had these records for four months without updating their Rule 26(a)(1) disclosures; under Rule 37(c)(1) I may exclude them as a sanction. Whether to grant sanctions under Rule

With these evidentiary contours in mind, taking the facts in the light most favorable to plaintiffs, the relevant facts are as follows: Hartford is an Indiana corporation with its principal place of business in Hartford, Connecticut. Jonathan Pepper is an Illinois corporation; at all times relevant to this lawsuit its president and majority shareholder was Sanford Finley ("Finley"). The other plaintiff in this case, Teakniques, is also an Illinois corporation whose articles of incorporation were filed with the Illinois Secretary of State in 2002; at all times relevant to this lawsuit its president and only shareholder was Crytser.

Cryster is a central figure in this lawsuit. Cryster became involved in purchasing furniture in Indonesia for resale in the United States. In August of 2002 he transferred to Teakniques ownership of his inventory of Indonesian furniture in exchange for Teakniques stock. The same day he transferred his inventory, Teakniques entered into a consignment agreement for Jonathan Pepper to sell Teakniques' furniture inventory. However, the bill of sale attached to the consignment agreement, which listed the furniture consigned to Jonathan Pepper as part of the consignment agreement, was dated a week later than the consignment agreement.

37 is within my discretion where the violation was harmless. *David v. Caterpillar Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (citations omitted). Here, the failure to produce these records for four months was harmless. Plaintiffs obtained them after Hartford filed its motion for summary judgment, and did produce them with its response. Hartford has not articulated any basis for prejudice, so I will admit Exhibit H.

In July of 2001, Jonathan Pepper entered into a lease agreement for warehouse space at 641 Archer Avenue, #141, in Aurora, Illinois (the "Aurora warehouse"). Cryster signed the lease agreement as Jonathan Pepper's vice president. Cryster signed another lease as an officer of Jonathan Pepper to lease space in Amboy, Illinois.

Hartford issued insurance policy 83 SBA FM4025 (the "policy") to Jonathan Pepper. The policy had effective dates of August 9, 2002 through August 9, 2003. The terms of the policy provided that Hartford would pay for "direct physical loss of or damage to Covered Property at the premises." The declarations page of the policy originally provided a $21,100 limit of insurance on the replacement cost of business personal property, and provided no coverage for the replacement cost of the personal property of others. However, on August 9, 2002 Hartford issued a policy endorsement changing the limit of insurance for business personal property from $21,100 to $250,000. On August 27, 2002, Hartford issued another policy endorsement changing the business personal property coverage from $250,000 to $25,000, adding coverage for the replacement cost of the personal property of others of $225,000, and adding "TEAK NIQUES, INC." as a loss payee for the "personal property of others." On August 16, 2002 Hartford issued a policy endorsement revising the location of premises to read "641 ARCHER AVE #141 SHETLAND BUSI AURORA, IL. 60506." The location of the

premises previously read "255 HIGHLAND AVENUE AURORA IL 60506" which plaintiffs contend was the address indicated on its lease agreement and another way of identifying the Shetland Business Park location of the Aurora warehouse.

Under the terms of the policy, Hartford will not pay for

> e. Dishonesty: Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
>
> (1) Acting alone or in collusion with others; or
>
> (2) Whether or not occurring during the hours of employment.
>
> This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

The policy also provides that the coverage is void if

> you or any other insured ("insured"), at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:
>
> (1) This Coverage Form;
> (2) The Covered Property;
> (3) Your interest in the Covered Property; or
>
> (4) A claim under this Coverage Form.

On August 31, 2002 a fire occurred at the Aurora warehouse. A responding unit of the Aurora Fire Department did not have to force entry into Jonathan Pepper's leased portion of the warehouse. According to ATF agent Cynthia Beebe ("Agent Beebe"), who

investigated the fire, the fire was "clear-cut arson," meaning it was intentionally set. Agent Beebe reached this conclusion because certain devices were found in the Aurora warehouse, namely candles inserted into "some kind of little straw with some straw underneath." There were four such devices found within Jonathan Pepper's area of the warehouse, and two found next to but outside of Jonathan Pepper's area. None of the agencies who investigated the fire ever determined that plaintiffs caused the fire or the ensuing damage.

On September 3, 2002, Cryster submitted a property loss notice to Hartford on behalf of Jonathan Pepper. As part of the claims investigation process, Hartford interviewed various individuals, including Cryster. Cryster also participated in an examination under oath. In addition, the Aurora fire investigators interviewed various witnesses. Cryster told the Aurora fire investigators that his "guess" was that he left Amboy, Illinois around 4:30 or 5:00 p.m. on August 31, and arrived at the Aurora warehouse between 5:30 and 6:00 p.m. Cryster told Hartford investigators that he left Amboy around 4:30 or 5:00 p.m and arrived at the Aurora warehouse between 5:45 and 6:30 p.m. Cryster told Hartford investigators that he used a key to enter the warehouse building, and that the door to the warehouse was "jazzed up" and that the handle wouldn't move and was "all pried open." Cryster said that he heard forklifts operating somewhere at the other end of the warehouse

where another tenant, BIM, normally had forklifts as part of its operation. According to what Cryster told Hartford investigators, he came to the Aurora warehouse that night to pick up a few items to sell in Amboy; he loaded his vehicle up with small items from the warehouse to take back to Amboy to sell. After unloading the items at Amboy, Cryster went home and arrived about 9:00 p.m.

Cryster was previously married to Carol Cryster. Under the terms of their divorce, rental properties that Cryster owned with Carol Cryster were sold, with the proceeds split 60/40 in favor of Carol Cryster. Their martial settlement agreement indicates that at the time of the settlement Cryster and Carol Cryster had about $9,000 in outstanding credit card debt which was paid from the sale of the rental properties, but that after the parties' separation Cryster had "run up much larger balances on these credit cards and others" and under the terms of the agreement he agreed to be responsible for those balances. He also agreed to be responsible for $170,000 in business debt. When Cryster spoke with fire investigators after the fire he told them his credit was "lousy." Hartford's expert witness examined Cryster's personal and business records and found that Cryster experienced negative business income in 2001, 2002 and 2003. Cryster received $2,400 monthly in disability income from the Veterans Administration. Between September 2001 and September 2002 Jonathan Pepper had monthly sales totaling at least $138,000.

According to Hartford, Cryster spoke with Wickey, an investigator for Hartford, on September 18, 2002. According to the interview transcript prepared by Hartford, the following exchange occurred between Wickey and Cryster:

> Wickey: Continuing with the tape, uh, did you have-oh, I asked, any other previous fire losses at all, ever, home, business?
>
> Cryster: No.
>
> Wickey: Any other theft losses?
>
> Cryster: Well, there was $700 taken here.
>
> Wickey: Other. You said there was $700 cash here.
>
> Cryster: I had, I had a metal box with uh, change in it and some sales I made here during the week.

During his deposition, Cryster stated that he had listened to a recording of his interview with Wickey and that he did not believe the transcript accurately reflected the interview. He stated that when he listened to the recording he did not hear a "no" in response to the question, "Any other previous fire losses at all ever, home, business?" He stated that when he responded to the question about fire losses he answered that there was $700 taken in this case.[2]

---

[2]As discussed *supra*, one of the exhibits plaintiffs submitted and requested the court examine in ruling on defendant's motion, plaintiffs' Exhibit G, is purportedly a copy of the recording of Wickey's examination. Plaintiffs argue the recording supports Cryter's deposition about the inaccuracy of Hartford's transcript.

During his examination under oath with Hartford, Cryster also stated that he had never had any fire claims.[3]  However, in his deposition, Cryster admitted that he potentially had five prior insurance claims involving fire losses.  These five losses included: (1) a kitchen fire in his former home in Pennsylvania about 35 years before the Aurora warehouse fire; (2) an incident about 15 years later in which his van was stolen and set on fire while he was in a bar; (3) a fire around five years later at one of his rental properties caused by an electric lounge chair short-circuiting; (4) a fire around the same time in West Chicago at a rental property with smoke damage caused by a tenant throwing a blanket on top of a hair dryer; and (5) a fire around August of 2000 at the Aurora warehouse in which someone broke in, committed

---

Since plaintiffs did not properly authenticate Exhibit G, however, I will not consider it.

[3]During his examination under oath Cryster had the following exchange:

> Q.   Have you ever had any theft claims before?
> A.   No.  I can't think of any.
> Q.   Have you ever had any fire claims before?
> A.   No.
> Q.   Any other kinds of insurance claims that you can think of other than the property damage vehicle ones?
> A.   Just cars and when I fell off the truck. . . . I did have when I first moved out here like twenty years ago I had a four-wheel drive van.  I went to a biker bar. I used to drink.  And somebody took it. . . . It was set on fire.

14

some vandalism, and lit four or five fires throughout the building causing smoke damage.[4]  Admissible evidence confirms that Cryster filed a claim and received payment in connection with the theft of his van in the 1980s, and that he filed an insurance claim for a house fire in his home in Pennsylvania in the 1970s.

Hartford denied Jonathan Pepper's claim.  Greg DeBoer ("DeBoer"), a senior property general adjustor at Hartford, oversaw Wickey's investigation of Jonathan Pepper's claim.  Before DeBoer became involved, another adjuster, Michael Rue ("Rue"), was assigned to the claim, and went to the Aurora warehouse to inspect it after the fire.  He testified that he noted that entry into the insured's space appeared to have been made through a dent in the drywall from the hallway, and that once inside stock was knocked over and fires were set.  Rue also noted that there was damage to the open area in an area outside Jonathan Pepper's space used by a recycling company.  Rue also noted that there was damage to the hardware handles and lock set and pry marks on the door trim and jambs to the main door in the area of the Aurora warehouse that had damage.  Rue further noted that there was also a cart of items found by the door to the warehouse suggestive of an attempted theft.

_____

[4]Cryster testified that he was not sure if the two rental property incidents involved the insurance company because Carol Cryster handled that portion of the business.

DeBoer ultimately wrote a claim denial letter after the decision to deny the claim was made by individuals in "the home office." According to DeBoer, Hartford denied the claim because it believed that Cryster set the fire or had someone set it for him. DeBoer testified that Hartford never determined a reasonable estimate of the value of Jonathan Pepper's loss because it denied the claim before it got to that point.

After the claim was denied, plaintiffs filed the present lawsuit in the Circuit Court of Cook County, Illinois. Hartford then removed the case under this court's diversity jurisdiction. Hartford has now filed for summary judgment. Hartford's motion contends that it is entitled to summary judgment on plaintiffs' claims because Cryster was responsible for the fire and violated the fraud, concealment and misrepresentation provision of the policy, and there is significant evidence that Cryster set the fire such that its denial of plaintiffs' claim was not arbitrary or vexatious. In addition, Hartford contends it is entitled to summary judgment on its counterclaim because the uncontroverted evidence is that Cryster knowingly filed a false claim.

II.

Hartford first argues that because the policy does not cover damage resulting from arson, it is entitled to summary judgment on plaintiffs' breach of contract claim. Under Illinois law, the interpretation of an insurance policy is a question of law.

*Illinois Sch. Dist. Agency v. Pacific Ins. Co., Ltd.*, 471 F.3d 714, 719 (7th Cir. 2006) (citing *Zurich Ins. Co. v. Walsh Constr. Co. of Ill., Inc.*, 352 Ill. App. 3d 504, 507, 287 Ill. Dec. 834, 838, 816 N.E.2d 801, 805 (Ill. App. Ct. 2004)). Where the words of an insurance policy are unambiguous I give them their plain, ordinary and popular meaning; ambiguous terms are construed "in favor of the insured and against the insurer that drafted the policy." *Illinois Sch. Dist. Agency*, 471 F.3d at 719 (quoting *Maremont Corp. v. Cont'l Cas. Co.*, 326 Ill. App. 3d 272, 277, 260 Ill. Dec. 133, 137, 760 N.E.2d 550, 554 (Ill. App. Ct. 2001)). Here, by its unambiguous terms the policy provides that it will not pay for losses caused by dishonest or criminal acts by the insured or its employees or representatives. The parties do not dispute that the fire caused damage to plaintiffs' property. There is no question that if Cryster or another agent or representative of Jonathan Pepper intentionally caused the fire, the policy does not cover the loss. An Illinois appellate court has previously held that where the sole shareholder of a company is responsible for the destruction of the company's property, the company may not recover insurance proceeds. *C.L. Maddox, Inc. v. Royal Ins. Co. of Am.*, 208 Ill. App. 3d 1042, 1050, 153 Ill. Dec. 791, 796, 567 N.E.2d 749, 754 (Ill. App. Ct. 1991) (citation omitted).

To successfully assert its arson defense under Illinois law, Hartford bears the burden of proving by a preponderance of the

evidence that Cryster intentionally set or caused to be set the fire at the Aurora warehouse, and that the fire was of an incendiary nature. *See, e.g.*, *Norman v. American Nat'l Fire Ins. Co.*, 198 Ill. App. 3d 269, 289, 144 Ill. Dec. 568, 581, 555 N.E.2d 1087, 1100 (Ill. App. Ct. 1990); *Moore v. Farmers Ins. Exchange*, 111 Ill. App. 3d 401, 408, 67 Ill. Dec. 181, 186-87, 444 N.E.2d 220, 225-26 (Ill. App. Ct. 1982). Because of the candle devices found in the warehouse there can be no dispute that the fire was intentionally set. However, taking the facts in the light most favorable to plaintiffs, it is possible that Cryster was not responsible for the fire. Hartford contends that Cryster had motive and opportunity to set the fire. Cryster did admit that he was in the warehouse around the time that the fire was set, and despite the parties' dispute about Cryster's exact financial condition, Cryster had at least some financial incentive for starting the fire. However, while this is relevant evidence for a finder of fact to consider in determining whether Cryster was responsible for the fire, *see, e.g.*, *Dough, Inc. v. Badger Mut. Ins. Co.*, No. 96 C 818, 2007 WL 672242, at *2 (N.D. Ill. Oct. 27, 1997) (collecting Illinois cases), it is not dispositive for purposes of summary judgment. Whether Cryster set the fire is a question of fact for trial. Cryster denies that he set the fire and points to substantial evidence that someone else broke into the

warehouse and started the fire. I cannot grant summary judgment for Hartford on this basis.

III.

Hartford also argues that summary judgment on plaintiffs' breach of contract claim is appropriate because Cryster made misrepresentations to Hartford about the amount of loss and about his prior claims for fire losses. Although Hartford makes arguments in its summary judgment papers about Cryster misrepresenting the amount of the loss, none of its statements of fact in support of its motion present any facts supporting the conclusion that Cryster misrepresented the amount of loss other than the potential backdating of the inventory list attached to the consignment agreement. The only relevant misrepresentation is the purported misrepresentation about Cryster's prior losses due to fire.

Under the unambiguous terms of the policy, coverage is void if an insured commits fraud or intentionally conceals or misrepresents a material fact relating to a claim under the policy. Here, there is some evidence that Cryster represented to Hartford that he had never claimed any previous home or business fire losses when in fact he had by his own later admission potentially five such prior claims. This would be a material misrepresentation because it was relevant to Hartford's investigation and might have affected Hartford's actions. *See, e.g.*, *Passero v. Allstate Ins. Co.*, 196

Ill. App. 3d 602, 609, 143 Ill. Dec. 449, 453-54, 554 N.E.2d 384, 388-89 (Ill. App. Ct. 1990) (citations omitted).

However, even assuming that Cryster made a false statement to Hartford, this is not enough. For Cryster's statement to void coverage under the policy he must have committed fraud or intentionally misled Hartford. The Seventh Circuit, examining Illinois law, has confirmed that "intent to deceive must be present to find fraud." *Trzcinski v. American Cas. Co.*, 953 F.2d 307, 313 (7th Cir. 1992) (citation omitted). Normally the defense of fraud or false swearing, the defense Hartford asserts here, is a question of fact and only becomes a question of law when "viewing the evidence in the light most favorable to the insured, the court determines that any reasonable jury would find that the insured knowingly made false statements or willfully sought to defraud the insurer by misrepresentation." *Id.* at 313-14. Courts do not automatically infer fraudulent intent because an insured makes a false statement. *Id.* at 313.

Here, taking the facts in the light most favorable to plaintiffs, a reasonable finder of fact could find that Cryster did not knowingly make false statements and did not willfully seek to defraud Hartford by misrepresentation. First, Cryster testified that Hartford's transcript of his interview with Wickey was inaccurate and that he did not answer in the negative when Wickey asked him if he had any prior fire losses. Second, in his

examination under oath Cryster did disclose one of his prior fire losses by telling Hartford that his van was stolen and set on fire, and the question Hartford posed could be interpreted as asking whether Cryster personally had any prior fire claims, not whether his business and rental properties had prior claims.  In addition, most of the fire losses that Cryster mentioned in his deposition took place well before the fire in this case, so it is possible that they slipped Cryster's mind when asked about them during either the examination under oath or the interview.  It is possible that a reasonable finder of fact could find that Hartford's questions did not encompass some or all of Cryster's prior claims, that Cryster simply forgot about some or all of these claims, or that Cryster somehow misunderstood the questions Hartford posed to him during his interview or examination under oath and gave the best answers he could.  Therefore, I cannot grant Hartford summary judgment on this basis.

IV.

Hartford also argues it is entitled to summary judgment on plaintiffs' claim for attorneys fees and costs under 215 ILL. COMP. STAT. 5/155.  That statute allows the recovery of fees and costs in

> any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable.

215 Ill. Comp. Stat. 5/155(1). Hartford contends that the evidence that Cryster was potentially involved in setting the fire as well as Cryster's misrepresentations establish that Hartford did not act vexatiously or unreasonably in denying Jonathan Pepper's claim.

An insurer's conduct is not vexatious and unreasonable under the meaning of this statute if (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (internal citations omitted). Here, even taking the facts in the light most favorable to plaintiffs, the evidence is that Hartford had a bona fide dispute with plaintiffs concerning the scope and application of insurance coverage because Cryster made an arguably false representation to Hartford about his prior fire-related claims. This misrepresentation also gave Hartford a legitimate policy defense, and created a genuine issue of fact regarding coverage. Although ultimately Hartford may not prevail on this policy defense at trial, there is no evidence that Hartford acted vexatiously or unreasonably in initially denying Jonathan Pepper's claim. Therefore I grant summary judgment to Hartford on plaintiffs' claim for fees and costs under 215 Ill. Comp. Stat. 5/155.

V.

Finally, Hartford moves for summary judgment on its own counterclaim for civil damages for insurance fraud under 720 Ill. Comp. Stat. 5/46-5. In relevant part, that statute provides for civil liability for any person

> who knowingly obtains, attempts to obtain, or causes to be obtained, by . . . the making of a false claim or by causing a false claim to be made on a policy of insurance issued by an insurance company . . . intending to deprive an insurance company . . . permanently of the use and benefit of that property.

720 Ill. Comp. Stat. 5/46-5(a). Hartford contends that the evidence clearly shows that plaintiffs filed a false claim. However, for the same reasons that I cannot grant summary judgment on plaintiffs' claims, I cannot grant summary judgment to Hartford on its counterclaim. A claim under Section 46-5 requires evidence that a person knowingly filed a false claim. Here, taking the facts in the light most favorable to plaintiffs, it is possible that plaintiffs did not knowingly file a false claim. It is disputed whether Cryster started the fire in the Aurora warehouse and whether Cryster intentionally made a false statement of material fact to Hartford. These issues must be resolved to determine whether plaintiffs knowingly made a false claim. I deny Hartford's motion for summary judgment on its counterclaim.

VI.

For the reasons stated above, Hartford's motion for summary judgment is granted in part and denied in part.  I grant Hartford's motion as to plaintiffs' claim for fees and costs under 215 ILL. COMP. STAT. 5/155, but otherwise deny it.  I deny Hartford's and plaintiffs' motions to strike.

**ENTER ORDER:**

_____
      **Elaine E. Bucklo**
   United States District Judge

Dated: September 26, 2007